892 F.2d 82
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
GANNAWAY ENTERPRISES, INC., Plaintiff-Appellant,
v.
WINSTON BROADCASTING NETWORK, INC., Defendant-Appellee.
 No. 88-6446.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 3, 1989.
Decided Dec. 13, 1989.
 
 Before NELSON, TROTT and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Gannaway Enterprises, Inc. ("Gannaway") appeals the district court's order dismissing its complaint for lack of personal jurisdiction. Gannaway argues that the district court erroneously concluded that it did not make a prima facie showing of personal jurisdiction over Winston Broadcasting Network, Inc. ("Winston") and that due process does not allow for the exercise of specific jurisdiction over Winston. We agree, and reverse.
 
 I.
 
 3
 Gannaway is a Georgia corporation with its principal place of business in Los Angeles County. It distributes syndicated television programs to various stations. Winston is an Ohio corporation with its principal and only place of business in Akron, Ohio. Winston's sole business is the operation of WBXN-TV in Akron, Ohio, an independent television station with no affiliation to a national network. It has no offices or employees in California.
 
 
 4
 The station manager of WBXN-TV first telephoned Gannaway about licensing programs for telecast. A Gannaway representative then met with her in Akron; their negotiations resulted in three separate Television Broadcast License Agreements (the "Agreements"), under which Gannaway provided episodes of various television programs for telecast over WBXN-TV between 1985 and 1987. The Agreements were signed by Winston in Akron and accepted by Gannaway in Los Angeles.
 
 
 5
 The Agreements contemplated a continuing licensee-licensor relationship, and were expressly to be governed by California law. Winston was to make payments to Gannaway in Los Angeles.
 
 
 6
 No one from Winston ever travelled to California in connection with these Agreements, but the parties exchanged telephone calls and mail. Eventually a dispute arose over Winston's failure to make payments. Gannaway filed this action for breach of contract in the Central Distict of California.
 
 II.
 
 7
 When a trial court's ruling is based only on review of affidavits and it has made no findings on disputed facts, we review the district court's dismissal under Fed.R.Civ.P. 12(b)(2) de novo to determine whether the plaintiff has made a prima facie showing of personal jurisdiction over the defendant. Steel v. United States, 813 F.2d 1545, 1548 (9th Cir.1987). All factual disputes presented by the affidavits are resolved in favor of the plaintiff. Id. at 1548. The burden rests on the party seeking to invoke the court's jurisdiction to establish that jurisdiction exists. Shute v. Carnival Cruise Lines, 863 F.2d 1437, 1439 (9th Cir.1988).
 
 III.
 
 8
 Federal due process requires that a nonresident defendant have minimum contacts with the forum state such that the exercise of personal jurisdiction "does not offend traditional notions of fair play and substantial justice." Data Disc, Inc. v. Svstems Technology Associates, 557 F.2d 1280, 1287 (9th Cir.1977); see International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, --- (1945). However, the nature and quality of the contacts required vary, depending on the type of jurisdiction asserted. Shute, 863 F.2d at 1440. Courts may exercise either general or specific jurisdiction over nonresident defendants. We need only determine whether the district court could exercise specific jurisdiction over defendant Winston.
 
 
 9
 The Ninth Circuit traditionally has applied a three part test to determine if specific jurisdiction exists. Although modified to an extent by Burger King v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); see Haisten v. Grass Valley Medical Reimbursement Fund, Ltd., 784 F.2d 1392, 1397 (9th Cir.1986), the test is still used as a framework for analysis. The factors are:
 
 
 10
 (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.
 
 
 11
 (2) The claim must be one which arises out of or results from the defendant's forum related activities.
 
 
 12
 (3) Exercise of jurisdiction must be reasonable.
 
 
 13
 Haisten, 784 F.2d at 1397; Data Disc, 557 F.2d at 1287.
 
 A.
 
 14
 The purposeful availment analysis turns upon whether the defendant's contacts are attributable to his own actions or solely to the actions of the plaintiff. Burger King, 471 U.S. at 471-72; Hirsch v. Blue Cross, Blue Shield of Kansas City, 800 F.2d 1474, 1480 (9th Cir.1986). The absence of physical contacts with a forum state cannot defeat personal jurisdiction "[s]o long as a commercial actor's efforts are 'purposefully directed' toward residents of another State." Burger King, 471 U.S. at 476.
 
 
 15
 A nonresident defendant's act of soliciting business in the forum state will generally be considered purposeful availment if that solicitation results in contract negotiations or the transaction of business. Shute, 863 F.2d at 1441; Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 840 (9th Cir.1986). Burger King also makes clear that "with respect to interstate contractual obligations ... parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." 471 U.S. at 473.
 
 
 16
 Winston contends that its contacts with California are insufficient because they involved only the telephone or mail, relying on Peterson v. Kennedy, 771 F.2d 1244 (9th Cir.1985), cert. denied, 475 U.S. 1122 (1986). There was no business relationship in Peterson and it is therefore distinguishable. In this case Winston solicited Gannaway by initiating contact on the telephone at Gannaway's California office. "[A] substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." Burger King, 471 U.S. at 476.
 
 
 17
 Making the forum state's law the governing law under a contract is a further indicator of purposeful availment. Gates Learjet Corp. v. Jensen, 743 F.2d 1325, 1331 (9th Cir.1984), cert. denied, 471 U.S. 1066 (1985). As put in Burger King: "Although such a provision would be insufficient to confer jurisdiction, we believe that ... [the choice-of-law clause] reinforced [defendant's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there." Burger King, 471 U.S. at 482.
 
 
 18
 While it is true, as Winston contends, that a contract alone cannot establish sufficient minimum contacts for the exercise of jurisdiction in the other party's state, Burger King, 471 U.S. at 478, in this case Winston also reached out to a California company, established a licensor-licensee relationship with it, undertook an obligation to make payments in California, and agreed to a California choice-of-law clause. Together these acts evidence Winston's deliberate affiliation with California and the reasonable foreseeability of litigation in that state.
 
 B.
 
 19
 The second prong of the test for specific jurisdiction requires that the claim "arise out of" the defendant's forum-related activities. Because Gannaway's claim arises out of the Agreements, i.e., Winston's failure to pay as required in California, this element of the test is satisfied. Data Disc, 557 F.2d at 1287; Corporate Inv. Business Brokers v. Melcher, 824 F.2d 786, 789-90 (9th Cir.1987).
 
 C.
 
 20
 Finally, the specific jurisdiction test requires that the exercise of jurisdiction be reasonable. Seven factors are relevant to this inquiry: the extent of the purposeful interjection into the forum state; the burden on the defendant of defending in the forum; the extent of conflict with the sovereignty of defendant's state; the forum state's interest in adjudicating the dispute; the most efficient judicial resolution of the controversy; the importance of the forum to plaintiff's interest in convenient and effective relief; and the existence of an alternative forum. Decker Coal, 805 F.2d at 840. A strong showing of reasonableness may lessen the required showing of minimum contacts. Hirsch, 800 F.2d at 1481; Haisten, 784 F.2d at 1397; Burger King, 471 U.S. at 477. If there is purposeful direction, reasonableness is presumed; defendant may rebut only by presenting compelling reasons why jurisdiction would be unreasonable. Id.
 
 
 21
 Winston has not rebutted the presumption of reasonableness. Although defendant would prefer to litigate in Ohio, modern advances in transportation and communications have significantly reduced the burden of litigating in a different state. Cf. Sinatra v. National Enquirer, Inc., 854 F.2d 1191, 1199 (9th Cir.1988) (noting that the burden of litigating in another country has been reduced). Ohio's sovereignty interests are not at stake. California has an interest in providing a forum for companies doing business there, and Winston's actions had an impact on Gannaway in California. See Data Disc, 557 F.2d at 1288. Much of the evidence is in California and California law will govern. Therefore, even though Ohio offers an alternative forum, the matter can be efficiently resolved in California. Given Winston's purposeful direction of three licensing agreements to California, the exercise of in personam jurisdiction is reasonable.
 
 
 22
 REVERSED and REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3